JESSE RUIZ (#317772)
Costen Ruiz Law
3435 Wilshire Blvd. Ste. 1195
Los Angeles CA, 90010
Telephone: (323) 302-4801
Fax: (323) 302-8264

Attorney for Defendant,
JOSEPH WONG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 2:23-CR-00596-RGK-2 |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| JOSEPH WONG, | |
| Defendant. | |

Through counsel, Joseph Wong, respectfully submits this memorandum to assist the Court in determining an appropriate sentence. Sentencing is scheduled for September 22, 2025.

I.   PRELIMINARY STATEMENT

A.  Procedural History

On April 14, 2025, Mr. Wong pled guilty to Count One of the Indictment, charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (PSR ¶¶ 1-2) Pursuant to the Plea Agreement, the parties stipulated to a base offense level of 8; enhancements for laundering between $1.5 million and $25 million, a conviction under § 1956, and sophisticated laundering; and reductions for acceptance of responsibility and zero-point offender status (PSR ¶¶ 4–5).

The PSR calculated a total offense level of 27, Criminal History Category I, yielding an advisory range of 70 to 87 months (PSR ¶ 143). The government has recommended a downward variance to offense level 24, with a range of 51 to 63 months. Mr. Wong has also agreed to restitution of $7,560,014 (PSR ¶ 8).

### B. Facts Related to the Offense

Between September 2022 and March 2023, Mr. Wong conspired with others, including Lu Zhang, Justin Walker, and Hailong Zhu, to launder victim funds from fraudulent cryptocurrency investment scams (PSR ¶ 20). Mr. Wong managed a network of launderers within Los Angeles County, coordinated acts through encrypted communications, and arranged for the transfer of fraud proceeds using shell company accounts (PSR ¶¶ 30–32). He also made calls to financial institutions, misrepresented himself as an account holder, and attempted to unfreeze restricted accounts (PSR ¶ 32).

He admits that at least $20 million in victim funds were laundered, with more than $2.2 million flowing through accounts linked to Sea Dragon Trading and Sea Dragon Remodel (PSR ¶¶ 53–54). Importantly, Mr. Wong was not involved in recruiting victims or operating the scams themselves, which were controlled by overseas actors (PSR ¶¶ 22–25).

### C. Personal and Social History

Mr. Wong is a 34-year-old naturalized United States citizen, born in China on May 13, 1991. He immigrated to this country at a young age and became a U.S. citizen, demonstrating his commitment to establishing a permanent life in this nation. He has lived in Southern California for many years, where he has developed strong ties to his family and community. He completed his secondary education and earned a high school diploma before pursuing vocational training in dental laboratory technology, receiving certification in 2011. These educational efforts reflect both discipline and a desire to acquire specialized skills, providing him with a foundation for lawful and productive employment after his release. (Exhibit A).

Mr. Wong has no prior criminal record and falls within Criminal History Category I (PSR ¶ 102). This case represents an aberration in an otherwise law-abiding life. Moreover, Pretrial Services has reported that he has been fully compliant with the conditions of his release since January 2025, including home detention and location monitoring (PSR ¶ 18) His compliance underscores that he can abide by court-ordered supervision and demonstrates his respect for this Court's authority.

Family members, instructors, and acquaintances describe him as loyal, hardworking, and kind. He has been recognized as a "good student," "kind-hearted," and someone who is dependable and supportive of those around him. These accounts, together with his clean record

and his educational and vocational achievements, paint the picture of a man whose involvement in this offense does not define his life or his future potential.

Taken together, his age, lack of criminal history, vocational skills, compliance with pretrial supervision, and strong community support, Mr. Wong presents as an individual with significant rehabilitative potential. These factors weigh heavily in favor of a sentence that acknowledges the seriousness of his conduct but also provides him the opportunity to reintegrate into society as a law-abiding, contributing member of his community.

## II.    SECTION 3553(a) FACTORS

Rather than doing away with Guideline sentences, *Booker* has allowed District Court judges more latitude than they previously enjoyed. All sentences begin with an analysis of the Guideline range and whether or not there is any latitude that can or should be given to a particular Defendant. *United States v. Booker* (2005) 543 US 220, 160 L Ed 2d 621, 125 S Ct 738.

Title 18, United States Code, Section 3553(a) instructs courts imposing sentences as follows:

> (a) Factors To Be Considered in Imposing a Sentence. – The court shall impose a **sentence sufficient, but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection.

18 U.S.C. § 3553(a) (emphasis added). Following that introductory mandate, section 3553(a) continues on to list a series of additional factors including, but not limited to, the history and characteristics of the defendant. *See*, 18 U.S.C. § 3553(a)(1)-(7).

Section 3553(a) represents "a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Gall v. United States,* 552 U.S. 38, at 50 & n. 6 (2007) (citation omitted). Courts must consider each of those factors in fashioning sentences that are "sufficient, but not greater than necessary" to comply with those statutory objectives. 18 U.S.C. § 3553(a). They include the history and characteristics of a defendant, the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. §§ 3553(a)(1), (2)(A). They also include the need for the sentence to afford adequate deterrence and to consider the public's need for protection from future crimes. 18 U.S.C. §

3553(a)(2)(B)-(C). Section 3553(a) further requires the Court to consider the kinds of sentences available and Guidelines range applicable to the defendant ((a)(3) and (4)), and any pertinent policy statement issued by the Sentencing Commission ((a)(5)). The factors also emphasize the need to avoid unwarranted sentencing disparities among defendants with similar records ((a)(6)).

Moreover, the Guidelines are advisory only, they are not mandatory, they are not even presumptively reasonable, and they represent only one of a number of relevant considerations. *See Nelson v. United States*, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable . . . . The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable."); *Rita v. United States*, 551 U.S. 338, 367 (2007) ("the Guidelines are truly advisory"). An independent review of the factors set forth in 18 U.S.C. § 3553(a) should occur in each case as well, as the court must "'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.'" *Gall*, 552 U.S. at 52; *see also Koon v. United States*, 518 U.S. 81, 113 (1996).

### A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

The offense in this case is undoubtedly serious. Mr. Wong participated in a conspiracy that laundered more than $20 million in proceeds derived from fraudulent cryptocurrency investment scams (PSR ¶¶ 53–54). His conduct included assisting in the creation of shell companies, transferring victim funds through domestic accounts into international financial institutions, and making misrepresentations to financial institutions in order to prevent accounts from being frozen (PSR ¶¶ 30–32). These actions, though not at the level of the overseas operators who executed the scams themselves, played a role in enabling the larger scheme to function.

At the same time, Mr. Wong's conduct must be understood in context. He was not a mastermind or architect of the "pig-butchering" frauds that devastated victims across the United States. Those fraudulent operations were devised and executed overseas, and Mr. Wong neither recruited victims nor controlled the ultimate disposition of the stolen money (PSR ¶¶ 22–25).

4

2:23-CR-00596-RGK-2

Instead, his role was confined to domestic laundering activities, taking direction from others within the conspiracy. He was not a leader of the overall criminal enterprise, but rather a participant whose conduct facilitated the transfer of funds within the United States. His limited position within the hierarchy of this international network distinguishes him from higher-level co-conspirators and supports the imposition of a sentence that is significant but tempered.

Mr. Wong's personal history further demonstrates that this offense is an aberration rather than a defining feature of his life. He is 34 years old, a naturalized United States citizen, and has no prior criminal record whatsoever (PSR ¶ 102). He falls within Criminal History Category I, and the Presentence Report confirms his complete lack of prior involvement with the criminal justice system. Since his arrest in January 2025, Mr. Wong has also been fully compliant with all conditions of release, including home detention and location monitoring (PSR ¶ 18). His conduct under supervision demonstrates respect for the Court's authority and the ability to conform to lawful requirements when directed.

Beyond his lack of criminal history, Mr. Wong has shown positive contributions to his community and the capacity to build a stable life. He holds a high school diploma and completed vocational training in dental laboratory technology in 2011. This training reflects both initiative and discipline, as well as an ability to gain technical skills that can be used to support himself lawfully. Letters and certificates included in the mitigation materials describe him as a hardworking, kind-hearted, and loyal individual. Former instructors have recognized him as a "good student" and a "kind person," underscoring the view that he is capable of living a productive, law-abiding life if given the opportunity.

Taken together, the circumstances of the offense and Mr. Wong's history present a nuanced picture. His involvement in laundering activities was serious, but his role was confined to the domestic level, he has no prior record, he has abided by Court orders, and he has demonstrated character traits consistent with rehabilitation. These factors strongly support the conclusion that this case represents an isolated departure from his otherwise law-abiding life.

**B. Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment. Need for the**

**Sentence to Afford Adequate Deterrence and to Consider the Public's Need For Protection From Future Crimes.**

There is no question that money laundering in the context of large-scale fraud is a serious offense that caused significant harm to victims, many of whom lost life savings and experienced devastating financial consequences (PSR ¶¶ 57–63). A custodial sentence is therefore necessary to reflect the seriousness of the conduct, promote respect for the law, and provide just punishment.

At the same time, § 3553(a) requires the Court to impose a sentence that is not greater than necessary to achieve these objectives. Mr. Wong's case presents mitigating factors that warrant careful consideration, including his lack of criminal history, compliance with supervision, and rehabilitative potential. A downward variance would ensure that the sentence imposed promotes respect for the law and provides deterrence while still accounting for Mr. Wong's unique circumstances and individual characteristics.

### C. Kinds of Sentences Available

The Court has discretion to impose a range of sentencing options, including a term of imprisonment, supervised release, restitution, and fines. The advisory Guidelines range provides one point of reference, but it is not binding. In light of Mr. Wong's personal history, his lack of prior criminal record, his compliance on pretrial supervision, and his demonstrated rehabilitative potential, a downward variance is warranted.

A sentence that balances accountability with recognition of these mitigating factors will both satisfy the purposes of § 3553(a) and allow Mr. Wong to reintegrate into society as a law-abiding citizen. Such an approach ensures that the sentence imposed is sufficient, but not greater than necessary, to achieve the goals of sentencing.

### D. Pertinent Policy Statement

The Sentencing Guidelines are advisory, not mandatory. *Nelson v. United States*, 555 U.S. 350, 352 (2009). Courts are directed to impose individualized sentences that account for the full scope of § 3553(a) factors. Mr. Wong's case presents precisely the circumstances where a variance is warranted: his limited role relative to the larger fraud, his lack of prior record, his compliance on supervision, and his potential for rehabilitation.

### E. Need to Avoid Unwarranted Sentence Disparities

Section 3553(a)(6) directs the Court to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct. In this case, Mr. Wong's sentence should reflect his individual conduct and circumstances while remaining consistent with sentences imposed on similarly situated defendants.

A downward variance is appropriate here to ensure proportionality and fairness. While Mr. Wong's role was significant, his conduct must be distinguished from that of higher-level co-conspirators who directed or profited more substantially from the scheme, as well as from overseas actors who orchestrated the fraudulent scams themselves. At the same time, his lack of criminal history, compliance with supervision, and demonstrated potential for rehabilitation place him in a different category from more entrenched offenders.

By recognizing both the seriousness of the offense and the mitigating factors present in Mr. Wong's case, the Court can impose a sentence that avoids disparity, achieves consistency with related cases, and furthers the objectives of § 3553(a) without being greater than necessary.

### F. Need to Provide Restitution to Any Victims

Restitution is mandatory under the Mandatory Victims Restitution Act. Mr. Wong has stipulated to restitution in the amount of $7,560,014 (PSR ¶ 8). He has acknowledged this responsibility and has already begun cooperating with financial disclosures. His commitment to repaying victims underscores his acceptance of responsibility and the sincerity of his remorse.

### III. CONCLUSION

Wherefore, Mr. Wong, requests that this Honorable Court take into consideration the factors discussed above and impose an appropriate sentence for Mr. Wong.

Dated: 09/15/2025

*Jesse Ruiz*
JESSE RUIZ
Attorney for JOSEPH WONG
Costen Ruiz Law
3435 Wilshire Blvd. Ste. 1195
Los Angeles CA, 90010
Telephone: (323) 302-4801
Fax: (323) 302-8264

# EXHIBIT A

# Certificate of Achievement

## Unique Dental Lab College

10504 Lower Azusa Rd., #101, El Monte, CA 91731

certifies that

## Joseph Wong

has satisfactorily completed the prescribed curriculum in

## Dental Laboratory Technology

Aug. 15, 2011
Date

*Luozhiyun*
Director

# Certificate of Achievement

## Unique Dental Lab College

The Life Sciences / Allied Health Division

Certifies that

# Joseph Wong

Has satisfactorily completed the prescribed curriculum in

Dental   Assisting   Program

Date: August 22, 2011

Director



中华人民共和国外交部请各国军政机关对持照人予以通行的便利和必要的协助。

The Ministry of Foreign Affairs of the People's Republic of China requests all civil and military authorities of foreign countries to allow the bearer of this passport to pass freely and afford assistance in case of need.



签发机关 / Authority
15001



| 护照 PASSPORT | 类型 / Type<br>P | 国家码 / Country Code<br>CHN | 护照号 / Passport No.<br>G15024506 |
|---|---|---|---|

姓 / Surname
郑 / ZHENG

名 / Given names
嘉贺 / JIAHE

性别 / Sex
男 / M

身份证号码 / Identity card No.
152301199105131532

出生日期 / Date of birth
13 MAY 1991

出生地点 / Place of birth
内蒙古 / NEI MONGOL

签发日期 / Date of issue
19 SEP 2005

有效期至 / Date of expiry
18 SEP 2010

签发地点 / Place of issue
内蒙古 / NEI MONGOL

POCHNZHENG<<JIAHE<<<<<<<<<<<<<<<<<<<<<<<<<<
G150245061CHN9105137M1009181192O1523<<<<<<70

# Mt. San Antonio College

Continuing Education Division ESL Department

This Certifies That

## Joseph Zheng

Has Received Special Recognition For

**Friendly, Good Person, Funny, Good Student, Always Late, Kind-hearted, Grass Wolf, Burger Boy and Handsome**

Given in Walnut, California
December 11, 2009
Instructor: Shirley Lundblade

MT. SAC

# MT. SAN ANTONIO COLLEGE

## ESL Department
## Continuing Education Division

This Certifies that

# Jia He Zheng

Has Successfully Passed the Course of Study in

# Level 1

Given in Walnut, California
On This Day December 12, 2009

*Instructor*

**MT. SAC**
Mt. San Antonio College

# PROOF OF SERVICE

STATE OF CALIFORNIA )
)
COUNTY OF LOS ANGELES )

I am employed in the aforesaid county, State of California; I am over the age of eighteen (18) years, and not a party to the within action; I am not a registered California process server; my business address is 3435 Wilshire Blvd. Ste. 1195, Los Angeles CA 90010

I served the foregoing document described as:

**DEFENDANT'S SENTENCING MEMORANDUM**

on the:

[]  **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on the same day in the ordinary course of business. I am aware that on motion of party service, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit.

[]  **(BY ELECTRONIC MAIL)** I caused said document(s) to be transmitted to the email address(es) of the addressee(s) designated.

[]  **(BY FAX)** I caused such documents to be transmitted by facsimile to the offices of the addressee(s). The facsimile machine used complies with California Rules of Court, Rule 2003, and no error was reported by the machine.

[]  **(BY PERSONAL SERVICE)** Hand delivered or caused to be hand delivered.

[]  **(BY OVERNIGHT DELIVERY)** By Federal Express or such other overnight delivery service for collection and processing of documents.

Executed on _____ at COSTEN RUIZ LAW, 3435 Wilshire Blvd. Ste. 1195, Los Angeles, CA 90010. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____